United States Court of Appeals,

Eleventh Circuit.

No. 94-5314.

FINE AIRLINES, INC., Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION, Respondent.

May 10, 1995.

Review of a Final Order of the FAA Denying Waiver from Interim Compliance with Noise Level Standards of the Airport Noise and Capacity Act of 1990 (Florida Case).

Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.

PER CURIAM:

The issue on this appeal is whether the Federal Aviation Administration ("FAA") acted arbitrarily and capriciously in denying the application of Fine Airlines, Inc. for a waiver of the December 31, 1994, interim compliance date established by 14 C.F.R. § 91.867 pursuant to the Airport Noise and Capacity Act of 1990 ("ANCA"), 49 U.S.C. §§ 47521, *et seq.* Aircraft are categorized by the noise level ranging from a stage 1, the noisiest, to stage 3, the quietest. The ANCA provided for the phasing out of stage 2 aircraft in favor of stage 3 aircraft by the year 2000, and delegated to the FAA authority to promulgate regulations establishing a schedule of phased-in compliance, including interim compliance dates. Air carriers could comply with the noise requirements by purchasing stage 3 aircraft or, through hushkit, adapting their stage 1 or 2 aircraft to stage 3 noise levels. Pursuant to § 91.867(a)(2), a new entrant United States air

carrier, like Fine Airlines, must by the initial compliance date of December 31, 1994, have at least 25% of its fleet in compliance with stage 3 noise levels. However, 14 C.F.R. § 91.871 permits a waiver of the interim compliance requirements under certain specified circumstances.

In 1992, Fine Airlines began its cargo service operations between the United States and numerous Central American, South American and Caribbean countries. By the end of 1992, it had four stage 2 aircraft. It added five stage 2 aircraft in 1993. By September 1, 1994, it had added another stage 2 aircraft, and in the instant petition for a waiver filed September 1, 1994, it indicated an intention to acquire two more stage 2 aircraft before the end of 1994. In May, 1992, Fine Airlines began working with a manufacturer to develop a hushkit which could convert its stage 2 aircraft in order to meet the stage 3 noise levels.

On September 1, 1994, Fine Airlines petitioned the FAA for a waiver of the December 31, 1994, interim compliance date, pursuant to 14 C.F.R. § 91.871. The FAA denied the waiver on December 8, 1994. On December 16, 1994, Fine Airlines filed a petition for reconsideration, which was denied by the FAA on December 20, 1994.

The regulation governing the instant application for waiver provides in relevant part as follows:

Section 91.871 *Waivers from interim compliance requirements.*

(a) Any U.S. operator ... subject to the requirements of ... [section] 91.867 of this subpart may request a waiver from any individual compliance requirement.

(b) Applications must be filed with the Secretary of Transportation at least 120 days prior to the compliance date from which the waiver is requested.

(c) Applicants must show that a grant of waiver would be in the public interest, and must include in its application its plans and activities for modifying its fleet, including evidence of good faith efforts to comply with the requirements of ... § 91.867....

(d) Waivers will be granted only upon a showing by the applicant that compliance with the requirements of ... [section] 91.867 at a particular interim compliance date is financially onerous, physically impossible, or technologically infeasible, or that it would have an adverse effect on competition or on service to small communities.

14 C.F.R. § 91.871. The regulation clearly requires a showing of good faith efforts to comply with the interim compliance dates of § 91.867, including the December 31, 1994, interim compliance date.[1] The issue in this case is whether the FAA acted arbitrarily and capriciously in finding that Fine Airlines did not satisfy the good faith criterion.

The crux of the FAA decision denying the waiver was that Fine Airlines had failed to demonstrate that it had "established a timely, achievable plan for compliance and made reasonable efforts to keep that plan current and follow it." Thus, the FAA concluded that the actions of Fine Airlines did not constitute a good faith effort to comply with the interim compliance requirements. *Fine Airlines, Inc.,* FAA Docket No. 27898 (Dec. 8, 1994), at 5. The agency opinion pointed out that Fine Airlines began operations in 1992, and that its 1992 report to the FAA indicated that it would be in compliance. Fine Airlines' 1993 report indicated that it would not meet the first compliance deadline, December 31, 1994, that the expected date of certification for its hushkit project was

---

[1]We find no merit in Fine Airlines' argument that its demonstration of technological infeasibility as of the December 31, 1994, compliance date was sufficient in and of itself without any showing of good faith.

in early 1995, and that it intended to apply for a waiver of the December 31, 1994 deadline.  The agency opinion also noted:

> It is important to note that this does not appear to be a case in which an operator had a plan to hushkit its aircraft before the compliance date and at some late hour, was unable to follow through with that plan and needs extra time.  None of the materials submitted by Fine Air indicates, nor does the petitioner argue, that it thought the hushkit would be ready in time to meet the first compliance date.

*Id.* at 7.    Fine Airlines filed a petition for emergency reconsideration on December 16, 1994.  Among other things, that petition purported to explain the delays causing its failure to meet the December 31, 1994, compliance date, proffering additional evidence for that purpose.   The FAA denied reconsideration on December 20, 1994.

We cannot conclude that the FAA decision in this case was arbitrary or capricious.  After oral argument and a careful review of the briefs and record in this case, we are satisfied that Fine Airlines has failed to demonstrate that its plan to comply through the vehicle of its hushkit project was a timely and achievable plan for compliance.  As the agency opinion so clearly articulates: "None of the material submitted by Fine Air indicates, nor does the petitioner argue, that it thought the hushkit would be ready in time to meet the first compliance date." *Id.* at 7.  The agency also pointed out that Fine Airlines' 1992 report indicated a plan to comply, but provided no facts to support its expectation of compliance.   The 1993 report acknowledged a lack of compliance—i.e., that the expected date of certification for its hushkit was not until early 1995—and indicated an intent to apply for a waiver.   Although it began working with the hushkit

manufacturer in May, 1992, a contract with the manufacturer was not entered until May, 1993.  Significantly, the contract contained no date for delivery.  In an attempt to pinpoint the source of its evidence of good faith, Fine Airlines at oral argument pointed to the May 1994 report of its manufacturer.  However, nothing in that report demonstrates that the hushkit project was a timely and achievable plan for compliance.  Indeed, the report contemplated delivery dates only in 1995.  The report contained little or no explanation relating to the reasonableness of the hushkit plan or the reasons for delay.

Fine Airlines' petition for agency reconsideration was apparently an attempt to rectify the obvious deficiency in its prior submissions, i.e. its failure to demonstrate that its hushkit project was a reasonable plan for compliance within the interim compliance dates.  For this purpose, Fine Airlines submitted additional information[2] with its petition for reconsideration, in the form a December 16, 1994, update from the manufacturer, updating its previously-submitted May, 1994, report.  The December 16, 1994, update purported to explain production delays.  We are in full agreement with FAA that the additional information falls far short of satisfying the deficiency in Fine Airlines' showing.  The four delays described in that document are woefully vague, and provide very little assistance to the factfinder with respect to its determination whether Fine Airlines' hushkit project

---

[2]Fine Airlines' argument that the FAA had a duty to ask for additional information is frivolous.  The burden was on Fine Airlines to present evidence in support of its waiver application.

constituted a reasonable plan of compliance. For example, there is no indication at all of chronology, i.e., the timing of the delay or the effect of the delay on compliance with the compliance deadline dates. Moreover, the update document undermines Fine Airlines' position in that it indicates that delays have been experienced only with respect to one major component and that the delays being encountered are relatively minor and minimal in comparison with those that have been encountered in previous hushkit programs. Rather than supporting Fine Airlines' position, the update document suggests that there have been fewer delays than usual, and thus that the hushkit project was never a plan reasonably calculated to permit compliance.

We readily conclude that Fine Airlines failed to demonstrate that its hushkit project constituted a "good faith effort[ ] to comply with the requirements of ... § 91.867." 14 C.F.R. § 91.871(c).[3] Accordingly, the order of the FAA denying the instant

---

[3]We decline to address Fine Airlines' argument that the FAA acted arbitrarily and capriciously in departing from the standards previously applied in evaluating good faith compliance efforts. The prior standards to which Fine Airlines points relate to the phase-out of stage 1 airplanes in 1985. In particular Fine Airlines points to the guidance provided in *In Re: Lineas Aereas del Caribe, S.A.,* 50 Fed.Reg. 19,102 (May 6, 1985). We decline to address this argument for two reasons. First, Fine Airlines' argument is, with one exception mentioned below, a mere repetition of the bald statement that a different standard was applied. We decline to address such a vague argument.

Second, the only specific assertion by Fine Airlines is that the FAA failed to recognize that the *Caribe* guideline, *id.,* suggested that a good faith effort would include a firm contract with the earliest possible delivery date. Assuming *arguendo,* but expressly not deciding, that good faith would be satisfied by a firm contract with the earliest possible delivery date, it is clear in this case that Fine Airlines has not satisfied that standard. Its contract contains no

waiver is

AFFIRMED.

---

delivery date at all.  Moreover, Fine Airlines has made no showing at all that the instant circumstances relevant to good faith compliance are sufficiently similar to the circumstances addressed in *Caribe, id.,* to require application of the same criteria.  We note that the *Caribe* guidelines set forth on May 6, 1985, followed a period of inconsistent application of the standards by the FAA.  *See Airmark Corp. v. FAA,* 758 F.2d 685 (D.C.Cir.1985).  We note that the *Caribe* guidelines required that the firm contract referred to therein be entered as of a particular date, which would obviously have no relevance to the instant circumstances.  We note further that the instant circumstances derive from subsequent legislation, i.e., the 1990 Airport Noise and Capacity Act, that the regulations pursuant to that Act were published in final form on September 25, 1991, and thus that Fine Airlines has been on notice of these regulations since at least September 25, 1991.  As noted in the text of this opinion, Fine Airlines has failed to adduce evidence to demonstrate its entitlement to a waiver under the clear language of those 1991 regulations.  In light of the foregoing, we cannot conclude that the instant circumstances are obviously similar to those extant in 1985, and in the absence of a showing on the part of Fine Airlines that the instant circumstances are in fact similar to those addressed in the 1985 *Caribe* guidelines, we decline to address the issue.